UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Paul Burns,<br><br>    Plaintiff,<br><br>    v.<br><br>Progressive Casualty Insurance Company, a California Foreign Corporation, et al.,<br><br>    Defendants. | No. 2:19-cv-02336-KJM-DMC<br><br>ORDER |

Progressive Casualty Insurance Company moves for summary judgment in this coverage dispute with its insured, Paul Burns. Progressive contends it is not obligated to cover Burns's claim for damage to his MasterCraft ski boat. Progressive's motion is **granted**. As explained in this order, Burns has not cited evidence that could show his loss was "sudden" under the policy's insuring agreement.

**I.     BACKGROUND**

Burns bought his boat in 2008. Burns Decl. ¶ 2, ECF No. 23-2. He took good care of it—changing the fluids regularly, preparing it for winter each year, fastening its rain cover over the top when he stored it outdoors. *Id.* ¶ 3. He last used it in July 2016. Pl.'s Resp. Stmt. Facts no. 5, ECF No. 23-3. He prepared it for the winter and stored it outdoors with the cover on. *Id.*

1

1    Then he left.  Fall, winter, and spring passed, and when he returned the next summer, the boat
2    was full of rainwater.  *See id.* no. 6; Burns Decl. ¶ 4.  Critical components had corroded.  Pl.'s
3    Resp. Stmt. Facts nos. 11, 12.

4        Progressive had insured the boat, including for that year.  *See* Mem. Summ. J. at 2 & n.1,
5    ECF No. 22-1.  Under the terms of its policy, Progressive promised to "pay for sudden, direct and
6    accidental loss to a covered watercraft that is not caused by collision."  Policy at 15, Addendum
7    to Def.'s Stmt. Facts, ECF No. 22-4.[1]  The policy lists some examples of losses "not caused by
8    collision," including explosions, earthquakes, fires, vandalism, theft, riots, and "windstorm, hail,
9    water, or flood."  *Id.* at 16.  The policy also includes several exclusions to this coverage.  The
10   eighth exclusion is the most relevant: "Coverage . . . will not apply for loss . . . caused directly or
11   indirectly by . . . gradual deterioration of any kind including, but not limited to, weathering, rust,
12   corrosion, mold, wet or dry rot, osmosis, delamination, or blistering . . . ."  *Id.* at 17.

13       Burns sent Progressive a claim under the policy.  Pl.'s Resp. Stmt. no. 16.  Progressive
14   denied the claim, citing the insuring agreement and the exclusion quoted above.  *See* Progressive
15   Letter (Aug. 27, 2019), Ricks Decl. Ex. B, ECF No. 23-1.  In short, it wrote, the damage was not
16   "sudden, direct and accidental" and was excluded because it was caused by "gradual
17   deterioration."  *See id.*  Burns then filed this lawsuit in California state court.  *See* Compl., ECF
18   No. 1-1.  His complaint includes claims for breach of contract, breach of the implied covenant of
19   good faith and fair dealing, and unfair business practices.  *See generally id.*  Progressive removed
20   the case to this court based on the parties' diversity.  *See generally* Not. Removal, ECF No. 1.  It
21   now moves for summary judgment.  *See* Mot., ECF No. 22.  Burns opposes the motion,
22   Progressive has replied, and the matter was submitted without oral argument.  *See* Opp'n, ECF
23   No. 23; Reply, ECF No. 25; Minute Order, ECF No. 24.
24   /////
25   /////

---

[1] The court has omitted boldface type from quotations, which the policy uses to show which terms are defined.  *Id.* at 1.  Except as explained in this order, none of the relevant policy terms is disputed.

2

Both parties also object to one another's evidence. *See* Opp'n at 4–6; Reply at 5–6. With one exception discussed below, the court has not relied on the evidence cited in these objections for any of the purposes that motivate them. The objections are thus moot.

## II. LEGAL STANDARD

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . . ; or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts"). Moreover, "the requirement is that there be no *genuine* issue of *material* fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

### III. ANALYSIS

In a diversity case governed by California insurance law, the court must "ascertain from all the available data what the state law is and apply it." *Ins. Co. of State of Pa. v. Associated Int'l Ins. Co.*, 922 F.2d 516, 520 (9th Cir. 1990) (quoting *West v. Am. Tel. & Telegraph Co.*, 311 U.S. 223, 237 (1940)). Under California law, the party asserting coverage bears the burden to establish a claim "is within the basic scope of coverage." *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003). Here, coverage is a question of contract interpretation: was the loss Burns claimed "sudden," "direct," and "accidental" under the terms of the insurance policy?

"Interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation." *Id.* at 647. Contract interpretation seeks out the parties' "mutual intention" at the time the contract was formed. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995) (citing Cal. Civ. Code § 1636). If possible, the parties' intent is inferred solely from the policy's written terms as a whole. *Id.* (citing Cal. Civ. Code § 1639). The policy's words are therefore the place to start. *Id.* Unless the parties intended to use words in a technical or special sense, a court reads a policy's language to understand its plain meaning as a layperson ordinarily would. *Id.* (citing Cal. Civ. Code §§ 1638, 1644).

California federal and state courts have already undertaken this interpretive exercise for the words "sudden" and "accidental" in a different context: exceptions to pollution exclusions. *See, e.g.*, *Smith v. Hughes Aircraft Co.*, 22 F.3d 1432, 1437 (9th Cir. 1993) (discussing, among other authorities, *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715, 754 (1993)). In that context, a "sudden" event is one that is both unexpected and has "a comparatively quick onset." *Shell Oil*, 12 Cal. App. 4th at 754. An event is not "sudden" if it "occurs slowly and incrementally over a relatively long time, no matter how unexpected or unintended the process." *Id.* But "sudden" refers only to the "commencement" of the pollution. *Id.* at 756. It conveys an "abrupt" onset. *Id.* (quoting *Lumbermens Mut. Cas. Co. v. Belleville Indus., Inc.*, 407 Mass. 675, 681 (1990)). An event may be "sudden" even if it does not "terminate quickly or have only a brief duration." *Id.*

/////

4

This interpretation fits the word "sudden" here.  The policy describes covered losses by listing examples, and all of the examples have an abrupt onset: impacts, explosions, earthquakes, falling objects, and breaking glass, among others.  Policy at 16.  The language of the insuring agreement suggests the same meaning.  After defining covered losses as "sudden," it carves out an exception for an event that is sudden in the same "abrupt" sense: a "collision."  *Id.* at 16.  And just as in *Shell Oil*, interpreting "sudden" here to mean only "unintended" would make the word "accidental" duplicative, a result to be avoided in contract interpretation.  *See* 12 Cal. App. 4th at 755 ("[I]n the phrase, 'sudden and accidental,' 'accidental' conveys the sense of an unexpected and unintended event, while 'sudden' conveys the sense of an unexpected event that is abrupt or immediate in nature.").  Burns himself agrees "'sudden' in the insurance policy means to happen quickly."  Burns Resp. Interrog. no. 13, Johns Decl. Ex. 8, ECF No. 22-14.

For that reason, and because Burns would bear the burden at trial to prove his loss is covered, he must cite evidence that could prove his loss was the result of an event that was both unexpected and abrupt or immediate.  Regardless of whether the damage was unexpected, he has not cited evidence that could show it was also abrupt or immediate.  He last used the boat in the summer of 2016 before storing it outdoors.  *See* Pl.'s Resp. Stmt. Facts nos. 4, 5.  It rained several times over the fall, winter, and spring.  *Id.* no. 7.  When he returned, he found the boat full of water.  The engine, transmission, and other components were submerged and had corroded.  *Id.* nos. 6, 10, 11, 12.  Burns does not know when the damage occurred exactly.  Burns Answer to Req. Admission no. 1, Johns Decl. Exs. 6 at 2, ECF No. 22-11.  He can say only that it was sometime between October 2016 and May 2017, when nearby weather stations recorded about 41 inches of rain, including two six-day spans of heavy rain in January.  Burns Decl. ¶ 9; Burns Resp. Interrog. nos. 2.a & 11.a, Johns Decl. Ex. 8, ECF No. 22-14.  According to his calculations, the rain that fell in any of these six-day periods was enough to fill the boat.  *See* Burns Decl. ¶¶ 8–9.  The accuracy of these estimates is irrelevant.  A week of rain is not "sudden" in the "abrupt" or "immediate" sense.  This evidence would not support a verdict in his favor.

Contrary to Burns's argument in opposition, the policy does not define all "weather-related phenomen[a]" as "sudden" by listing "windstorm, hail, water, or flood" as potential causes

of covered losses. *See* Opp'n at 9 (quoting Policy at 16). The power of weather to cause sudden loss does not establish that all weather-losses are sudden. And not all storms are sudden just because some storms can be.

But even if a "sudden" rainfall filled the boat, the policy insures against "loss," not rain or storms or weather, and Burns cites no evidence of "sudden" loss. Progressive cites, by contrast, the opinion of an expert, John Kelly, with decades of experience in boats and marine engines. *See* Kelly Decl. ¶¶ 5–14, ECF No. 22-17. Kelly concluded that the damage occurred over a "lengthy period of time"; some problems took "several months" to develop. *See id.* ¶¶ 29–35. Burns offers no evidence in response. He instead argues "electrical objects are well known for immediately becoming damaged upon contact with water." Opp'n at 9. Theories and arguments like these are not enough to overcome a motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(1)(A) & (e).

Burns's evidentiary objections to Kelly's opinions are also overruled. *See* Opp'n at 5–6. Burns first objects that other experts would not rely on the materials Kelly cites, which materials, he argues, are inadmissible in any event. *See id.* at 4–5. It would be reasonable for an expert in Kelly's field to rely on the materials he reviewed, including pleadings and discovery responses, photographs of the boat, diagrams and documents from the boat's owner's manual, and the deposition testimony of a man at the repair shop that issued an estimate of the damages. *See* Kelly Decl. ¶ 23; Fed. R. Evid. 104(a) ("The court must decide any preliminary questions about whether a witness is qualified . . . [or] evidence is admissible."); Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."). These materials "need not be admissible." Fed. R. Evid. 703.

Burns next objects that Kelly's opinions about "how long it took for rain to fill the boat are pure speculation," but he does not identify any passages in Kelly's declaration as suspect. Opp'n at 5. Kelly did not offer an opinion on how long it took for the boat to fill with rain. He concluded only that, in his experience, the damage would have taken several months to develop. Kelly Decl. ¶ 29.

/////

Burns's third objection is to Kelly's opinion that his training is "roughly equivalent to an advanced degree in engineering." *See id.* (citing Kelly Decl. ¶ 6). If that comparison is wrong, it is not disqualifying. Kelly's experience is relevant and extensive and shows he can offer reliable opinions about damage to boats and their components. *See* Kelly Decl. ¶¶ 5–14.

Finally, Burns objects to Kelly's statement that he is "not aware" of damage to Burns's boat that was not the result of causes listed in the exclusion Progressive relied on to deny coverage. *See* Opp'n at 5–6 (citing Kelly Decl. ¶ 38). The court does not reach the exclusion, so the objection is moot.

## IV. CONCLUSION

Because Burns has not cited evidence that could prove his losses were "sudden" under the policy's terms, he has not carried his burden to identify a genuine dispute about whether his claim fell within the scope of coverage. For the same reason, he cannot prove Progressive denied coverage in bad faith. Progressive is therefore entitled to summary judgment of all of Burns's claims. The court does not reach Progressive's alternative arguments, i.e., that Burns's losses were not "direct" or were excluded.

The motion for summary judgment at ECF No. 22 is **granted** and the **case is closed**.

IT IS SO ORDERED.

DATED: March 17, 2022.

_____
CHIEF UNITED STATES DISTRICT JUDGE